IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICOH COMPANY, LTD.,

                                                                                          OPINION and ORDER

                    Plaintiff,

                                                                                         06-cv-462-bbc

     v.

QUANTA COMPUTER, INC.
and QUANTA STORAGE, INC.

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      A jury found that defendants Quanta Computer, Inc. and Quanta Storage, Inc. indirectly infringed two patents related to optical disc drives owned by plaintiff Ricoh Company, Ltd., U.S. Patent No. 5,063,552 and U.S. Patent No. 6, 661,755. In an order dated March 23, 2010, dkt. #545, I denied defendants' motion for judgment as a matter of law, or, in the alternative, for a new trial. Now before the court is plaintiff's motion for a permanent injunction with respect to the '755 patent, or, in the alternative, for an ongoing royalty on future sales. Dkt. #513. (Plaintiff is not seeking an injunction with respect to the '552 patent because it has expired.) In particular, plaintiff is asking for an order enjoining defendants from "selling any recordable/rewritable drives—either directly or

1

indirectly—in the United States that include a buffer under-run protection feature." Plts.' Br., dkt. #517, at 1. Because I conclude that plaintiff cannot satisfy the four-factor test for obtaining a permanent injunction set out in <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388 (2006), I am denying plaintiff's request for a permanent injunction. In accordance with <u>Paise LLC v. Toyota Motor Corp.</u>, 504 F.3d 1293, 1315 (Fed. Cir. 2007), the parties will be directed to "negotiate a license amongst themselves regarding future use" of the '755 patent.

In <u>eBay</u>, the Supreme Court rejected the view that, in patent cases, "injunctions should be denied only in the unusual case, under exceptional circumstances and in rare instances . . . to protect the public interest." <u>Id.</u> at 394 (internal quotations omitted). Rather, the same standard for obtaining a permanent injunction applies in patent cases as in any other case. The plaintiff must show that (1) it has suffered an irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. <u>Id</u>. at 391.

In this case, there are few reasons to grant a permanent injunction and many that counsel against doing so. To begin with, it is undisputed that plaintiff does not practice the invention in the '755 patent. In fact, plaintiff no longer manufactures or sells *any* disc

2

drives. Tr. Tran., Vol 1C, dkt. #446, at 35. The best case for obtaining a permanent injunction often occurs when the plaintiff and defendant are competing in the same market. In that context, the harm in allowing the defendant to continue infringing is the greatest. E.g., i4i Ltd. Partnership v. Microsoft Corp., 589 F.3d 1246, 1276 (Fed. Cir. 2009). Because plaintiff is not competing with defendants for the same customers, it is more difficult for plaintiff to argue that it will be irreparably harmed without an injunction.

Plaintiff is correct that it is possible for a nonpracticing entity to satisfy the four-factor test. "For example, some patent holders, such as university researchers or self-made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their works to market themselves." eBay, 547 U.S. at 393. Of course, plaintiff is not a researcher or a self-made inventor. Rather, plaintiff may be more akin to an entity that four Justices concluded in their concurrence generally is *not* entitled to a permanent injunction:

> An industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees. For these firms, an injunction, and the potentially serious sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent. When the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest.

eBay, 547 U.S. at 396-97 (Kennedy, J., concurring with Stevens, J., Souter. J., and Breyer,

J.)

As defendants point out, plaintiff has not been miserly in issuing licenses for the '755 patent for any company willing to pay for one. Plaintiff's own witnesses testified at trial that plaintiff has issued licenses to Sony, Hitachi, Toshiba, Matsushita, Panasonic, Lite-On, BenQ, Pioneer, Phillips and IBM. Tr. Tran., Vol. 5B, dkt. #476, at 5; Tr. Exh. 1014, at 37, attached to Prince Decl., dkt. # 533. Plaintiff even issued a license to ASUS after that company was dismissed from this case for lack of personal jurisdiction. Id. In fact, plaintiff does not identify any sellers of optical disc drives other than defendants that have not yet taken a license. Thus, plaintiff cannot argue persuasively that it is trying to narrowly limit the practice of its invention rather than simply maximize a potential licensing fee. Also, as in the hypothetical situation discussed by Justice Kennedy, plaintiff's patent "is but a small component of the product [defendants] seek to produce," which is another factor suggesting that "legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest." eBay, 547 U.S. at 397.

Plaintiff says that defendants' "competitors will be encouraged to infringe the '755 patent" and that plaintiff's "entire licensing program worldwide will suffer because other manufacturers will be tempted to roll the dice and infringe [plaintiff's] patents" if plaintiff does not obtain an injunction. Plt.'s Br., dkt. #517, at 6-7. The first part of this argument assumes that there are any competitors left who do not have a license already. Further, with

4

respect to both arguments, plaintiff fails to point to any evidence showing that an injunction would have a greater deterrent effect than a compulsory license. Plaintiff says that, absent a threat of an injunction, infringers would have nothing to lose by forcing plaintiff to sue them, but this overlooks the cost of litigation as well as the possibility of a finding of willful infringement and an award of attorney fees for asserting a frivolous position. Even if I assumed that injunctions generally have a greater deterrent effect, plaintiff fails to explain why that factor weighs more heavily in this case than in any other case in which a court must determine whether a permanent injunction is appropriate. The logical conclusion of plaintiff's argument is to return to the view rejected by the Court in eBay that plaintiffs in patent cases are entitled to a permanent injunction as a matter of course because injunctions always serve as a better deterrent than an ongoing royalty.

  The balance of harms does not weigh heavily in either direction, but overall I believe that factor favors defendants. Both sides have taken varying positions regarding the feasibility of designing around the '755 patent, depending on which position serves a particular argument. However, even if the invention in the '755 patent is not the only way to perform buffer underrun protection, implementing a new design is complicated by the fact that defendants do not manufacture the infringing component in the drives. Thus, defendants would have to convince the manufacturer to come up with a noninfringing alternative or alter the component themselves after purchasing it from the manufacturer.

Plaintiff has not shown that either of these possibilities is realistic.

Alternatively, plaintiff argues that defendants could limit their sales of drives to companies that have licenses or "sell drives destined for countries other than the United States." Plt.'s Br., dkt. #517, at 12-13. However, neither of these options makes much sense. Restricting defendants' sales to particular companies benefits neither plaintiff nor defendants, but simply funnels defendants' business toward third parties. With respect to the other option, plaintiff fails to explain how defendants would be able to predict or control which country a disc drive was "destined" for when they sell drives to companies such as Dell or Gateway.

With respect to the question whether plaintiff has adequate legal remedies, plaintiff argues that calculating an ongoing reasonable royalty rate is not feasible in this case because defendant "Quanta Storage does not track its total sales in the United States." Plt.'s Br., dkt. #517, at 10. That argument is undermined by the trial in this case, in which plaintiff seemed to have little difficulty proposing a reasonable royalty rate to the jury for past infringement.

Certainly, the difficulty of calculating a reasonable royalty rate is no greater than crafting an appropriate injunction and then enforcing it. The jury did not find that defendants made or sold any infringing products in the United States, only that defendants contributed to infringement by others or actively induced it. Thus, crafting an appropriate

6

injunction is not as simple as listing particular products that defendants may not sell in the United States; rather, it would require prohibiting defendants from engaging in particular acts that might constitute indirect infringement. Plaintiff's proposed injunction states generally that defendants are prohibited from "selling in the United States—directly or indirectly—offering for sale or importing into the United States, or otherwise inducing or encouraging use of [infringing] drives in the United States." Dkt. #517-2. That language is so vague that it likely would violate the specificity requirements of Fed. R. Civ. P. 65. Nuxoll ex rel. Nuxoll v. Indian Prairie School Dist. #204, 523 F.3d 668, 675 (7th Cir. 2008) ("[A]n injunction . . . must contain a detailed and specific statement of its terms."); Patriot Homes, Inc. v. Forest River Housing, Inc., 512 F.3d 412, 415 (7th Cir. 2008) ("The preliminary injunction entered by the district court uses a collection of verbs to prohibit [the defendant] from engaging in certain conduct, but ultimately it fails to detail what the conduct is."). Monitoring and enforcing the injunction would be even more difficult because it would require plaintiff to determine when defendants were "encouraging" or "inducing" infringement and also when a third party was engaging in acts of direct infringement. Plaintiff does not identify how this could be accomplished without repeated trips to this court for evidentiary hearings.

Finally, plaintiff has failed to show that the public interest would be better served through an injunction rather than a compulsory license. Plaintiff argues that the

"Constitutional goal of promoting science" under Article I, § 8 favors an injunction. Plt.'s Br., dkt. #517, at 14. Again, plaintiff fails to identify any facts in this case that would help serve that purpose more than with respect to any other claim for patent infringement. In fact, plaintiff has not shown that an injunction would serve any purpose other than to increase its leverage in negotiations for a higher licensing fee. Because that is not an adequate ground for an injunction, plaintiff's motion for a permanent injunction will be denied.

In many cases, if an injunction is not appropriate, the plaintiff may be entitled to an ongoing royalty. Paice, 504 F.3d at 1314. Under Paice, the general rule is "to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty. Should the parties fail to come to an agreement, the district court [may] step in to assess a reasonable royalty in light of the ongoing infringement." Id. Accordingly, I will direct the parties to engage in negotiations regarding an appropriate royalty.

ORDER

IT IS ORDERED that

1. Plaintiff Ricoh Company Ltd.'s motion for a permanent injunction, dkt. #513,

is DENIED.

2. The parties are directed to engage in negotiations regarding an appropriate ongoing royalty rate. If the parties wish, they may request the assistance of the Clerk of Court to assist them with their negotiations. If the parties are unable to reach an agreement by May 14, 2010, plaintiff may file a renewed motion for an ongoing royalty on future sales.

Entered this 19th day of April, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge